UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                        Criminal No. 21-596 WJ

ALEXIS RIEGO,

    Defendant.

## **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

**THIS MATTER** comes before the Court upon Defendant's Second Motion to Dismiss Indictment or in the Alternative Suppress Evidence Obtained from Civil Case (Doc. 39), filed January 31, 2022. Having reviewed the parties' pleadings and the applicable law, this Court **DENIES** the motion.

## **BACKGROUND**

Defendant is charged with involuntary manslaughter and assault. He was working as a truck driver while driving on I-40 through the Laguna reservation on September 7, 2019. He allegedly crashed into several vehicles, which ended up killing four people and seriously injuring others. Parties dispute the cause of the crash. Defendant was criminally charged in relation to this incident, however before those charges were brought, the families of the crash victims filed a civil suit against him. They eventually settled the civil matter, however during both the civil and criminal investigations, certain law enforcement officers worked with and exchanged information with the victims' civil attorneys regarding the suits. Defendant filed the instant

motion seeking to dismiss his criminal indictment, or in the alternative to suppress information the government learned from the civil attorneys, on the basis that their joint involvement was improper.

## DISCUSSION

As a starting point, parties agree that the Government may use evidence acquired in a civil action in a subsequent criminal proceeding. *United States v. Miller*, 425 U.S. 435, 443 (1976); *United States v. Kordel*, 397 U.S. 1, 10 (1970). However, if such use would violate a defendant's constitutional rights or depart from the proper administration of justice, the prosecution is barred from using it. *Kordel*, 397 U.S. at 12. Examples of impropriety include the Government pursuing a civil action solely to obtain evidence to use in a criminal prosecution, or the Government failing to advise the defendant during a civil proceeding that it is contemplating criminal prosecution. *Id*. Importantly, standing alone, failure to warn that a criminal investigation may ensue is not improper. *Groder v. United States*, 816 F.2d 139, 144 (4th Cir. 1987). A violation only occurs if the government acted in bad faith—i.e. acted in a manner involving fraud, deceit, or the intent to deceive. *Id*.; *see also United States v. Carriles*, 541 F.3d 344, 356 (5th Cir. 2008) ("[F]ailing to warn that an investigation may result in criminal charges, absent affirmative misrepresentation, is not usually sufficient to constitute government deception."); *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1997) ("[T]he mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery. Therefore, the record here must disclose some affirmative misrepresentation to establish the existence of fraud." (citing *United States v. Prudden*, 424 F.2d 1021, 1033 (5th Cir. 1970))).

Defendant first requests that his indictment be dismissed, or that evidence obtained through the civil suit be suppressed because the FBI Agents lulled him into believing he was not the subject of a criminal investigation at the scene of the incident. He largely points to Agent Ryan Kacher's initial interrogation of him on the side of the road. He points to the facts that he was not advised of his *Miranda* rights and that his telephone was seized. Moreover, Agent Kacher never conveyed to Defendant that he was a suspect of a criminal investigation. He told Defendant he was going to "hang out" with him and that they were only in the law enforcement vehicle for "comfort and convenience." He also stated that the reason the FBI was involved was that it was their jurisdiction. He repeatedly told Defendant he was not going to jail.

The Court is at a complete loss to understand how these facts demonstrate that Defendant was "lulled" into believing the investigation was civil in nature. *United States v. Grunewald*, 987 F.2d 531, 534 (8th Cir. 1993) (providing that it is a "flagrant disregard of individuals' rights" to "deliberately deceive, or even lull" a person into incriminating themselves in a criminal investigation under the guise of pursuing a civil one). At this point, no civil investigation had begun and no civil attorneys had been contacted. The FBI Agents present were merely responding to the scene on a major interstate highway of a horrific crash involving multiple vehicles where four people were killed and others injured and were trying to figure out what happened. They had no knowledge of whether or not a civil case would be filed. There is no evidence that Agent Kacher's interrogation of Defendant was a guise for aiding a future civil investigation or that he lied, acted fraudulently, or intended to deceive. This is the opposite situation that occurred in *United States v. Tweel*, in which the agent intentionally misled the defendant through a "sneaky deliberate deception." 550 F.2d at 299. In fact, the conversations with Defendant Riego at the scene of the incident implied that there was a criminal investigation. The presence of the FBI would lead

a reasonable person to conclude that a criminal investigation—not a civil one—was a possibility. Indeed, Defendant discussed arrest and jail with Agent Kacher, demonstrating that the Defendant was aware of this possibility. Agent Kacher never stated that he was present for the purpose of a civil investigation; and though he assured Defendant he would not be taking him to jail that day, the interrogation about the crash which ended in the deaths of multiple people was clearly to gather information which reasonably could lead to a criminal prosecution. Even though Agent Kacher did not affirmatively inform Defendant that a criminal investigation might ensure, and even if he had been aware of the possibility of a civil suit, law enforcement is generally permitted to use ruses during investigations as long as it does not involve unconstitutional misconduct. *United States v. Ojeda-Ramos*, 455 F.3d 1178, 1184 (10th Cir. 2006); *see also Prudden*, 424 F.2d at 1032 ("Silence can only be equated with fraud where there is a legal or moral duty to speak or where any inquiry left unanswered would be intentionally misleading."). Regardless, however, the interrogations at the scene of the incident were unrelated to the civil lawsuit that had not yet commenced.

Defendant next takes issues with the FBI Agents' involvement after the civil suit was filed. For instance, at the hearing, Laguna Police Department Agent David Clendenin testified that he met the civil attorneys on three different occasions and may have exchanged information with them related to the incident. He also allowed them to conduct an external examination of the vehicles and take pictures of them. Moreover, he met with one of the experts used in the civil lawsuit. Nevertheless, this exchange of information does not exhibit any bad faith or misconduct to obtain otherwise unconstitutional material. Absent misconduct, the Government is permitted to use such evidence acquired in a civil action in a subsequent criminal proceeding. *Miller*, 425 U.S. at 443; *Kordel*, 397 U.S. at 10.

Finally, though little evidence was presented at the hearing, Defendant disputes prosecutors' involvement in his civil deposition. In the pleadings, it was set forth that prior to the deposition, the civil lawyer asked one of the prosecutors whether he had any recommendations for questions to ask during the civil deposition. The prosecutor did not recommend any questions. At the deposition, Defendant had a civil attorney and another attorney present solely for the purpose of potential criminal interests. Defendant invoked his Fifth Amendment privilege 184 times during the deposition. The civil attorney sent the prosecutor transcripts from the deposition. Defendant was indicted 8 months later. The Government asserts that the prosecutor did not improperly influence this deposition and that he spoke with the victims' civil attorney, instead of directly with victims, in order to comply with ethical obligations of professional conduct—namely that a lawyer not speak directly to an individual who is represented by counsel.

Even if adequate evidence of these actions had been presented, the case at hand is distinguishable from *United States v. Scrushy*, upon which Defendant relies. 366 F. Supp. 2d 1134 (N.D. Ala. 2005). In that case, the Government failed to inform the defendant at the time of his civil deposition that criminal prosecutions were looming. *Moreover*, the Government in *Scrushy* had a much more active role in the civil investigation. For instance, in *Scrushy*, the Government "had both notice and direct input" into the civil deposition. 366 F. Supp. 2d at 1138. The prosecutor told the civil lawyer which topics to avoid during the deposition in order to keep the defendant in the dark regarding the criminal investigation. *Id*. The prosecutor also instructed the civil lawyer to ask certain questions during the deposition and suggested that the lawyer move the deposition to a different venue. *Id*. The investigations were deemed "merged" due to this collaboration. *Id*. at 1137. In *Scrushy*, the Court distinguished *United States v. Handley*, 763 F.2d 1401 (11th Cir. 1985) by stating that prior to the deposition in that case, the Government had no notice or direct input,

and therefore exclusion of deposition testimony was not warranted. *Id*. at 1138. In the instant case, the Government had notice of the civil deposition, but the federal prosecutors in this case specifically declined to provide any direct input. Therefore, the circumstances of this case bear no resemblance to what occurred in *Schrushy* and so any evidence the Government obtains from the civil case against Defendant shall not be excluded based on the suppression grounds argued by Defendant in the instant motion.

The present case is also distinguishable from *United States v. Carriles*, 541 F. 3d 344 (5th Cir. 2008). There, the Court found that the district court's dismissal of an indictment was improper because the defendant had been warned at his Naturalization interview that he could exercise his right against self-incrimination, that anything he said could be used against him in other proceedings, and that lying could subject him to criminal penalties. *Id*. at 356. In other words, there was no insinuation by the government that a criminal case was off the table—it was clear that a criminal case could ensue. It appears Defendant in the present case was provided or was aware of the same warnings, as he exercised his right against self-incrimination during his civil deposition 184 times and had a separate lawyer present to advise him on criminal interests.

Moreover, the *Carriles* court noted that "[G]overnment misconduct does not mandate dismissal of an indictment unless it is so outrageous that it violates the principle of fundamental fairness under the due process clause of the Fifth Amendment . . . Such a violation will only be found in the rarest circumstances." *Id*. at 353 (citing *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997). Like the other discussed cases, *Carriles* stressed that the civil investigation must be a pretext, involve some type of government trickery or material misrepresentations, or contain government tactics that are "so grossly shocking and so outrageous as to violate the universal sense of justice." *Id*. Such evidence is completely absent in the present case. While Agent Clendenin and

the prosecutor communicated with the victims' civil lawyers, there is no evidence that this was for improper fraudulent purposes.

Finally, Defendant relies on *United States v. Parrott*, 248 F. Supp. 196 (D.D.C. 1965) in which the Court found that the defendants received general self-incrimination warnings, but were not informed that the matter had actually been referred to the United States Attorney's Office for criminal prosecution. However, as discussed, more recent cases have made clear that a lack of a warning, without a showing of governmental involvement or bad faith, is not enough to dismiss an indictment. *Groder v. United States*, 816 F.2d 139, 144 (4th Cir. 1987); *United States v. Carriles*, 541 F.3d 344, 356 (5th Cir. 2008). The *Parrott* case supports this proposition, as it ultimately held that the "Government cannot avail itself of civil discovery devices to obtain evidence for a subsequent criminal prosecution." 248 F. Supp at 202. *Parrott* seemingly relied on the fact that the Government was pursuing the civil investigation only in order to discretely obtain evidence for the criminal prosecution. As discussed, there is no showing that this is what occurred in the present case. Therefore, for the foregoing reasons, Defendant has failed to meet his burden in demonstrating that dismissal of the indictment or suppression of evidence is warranted.

## CONCLUSION

**IT IS THEREFORE SO ORDERED** that Defendant's Second Motion to Dismiss Indictment or in the Alternative Suppress Evidence Obtained from Civil Case (Doc. 39) is hereby **DENIED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE