UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                        Criminal No. 21-596 WJ

ALEXIS RIEGO,

    Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING THE UNITED STATES' MOTION TO EXCLUDE TESTIMONY BY PROPOSED EXPERT WITNESS DR. ALAN ZELICOFF (Doc. 59) AND ORDER FOR SUPPLEMENTAL BRIEFING

**THIS MATTER** comes before the Court upon the United States' Opposed Motion to Exclude Testimony by Defendant's Proposed Expert Witnesses or in the Alternative Compel Discovery (Doc. 59), filed March 31, 2022. Having reviewed the parties' pleadings and the applicable law, a hearing having been held and testimony and arguments having been considered, this Court determines that additional briefing on the testimony of Dr. Zelicoff is necessary.

## BACKGROUND

Defendant is charged with involuntary manslaughter and assault. He was working as a truck driver while driving on I-40 through the Laguna reservation in New Mexico on September 7, 2019. He allegedly crashed into several vehicles, which killed four people. Parties dispute the cause of the crash. In the instant Motion, the Government requests that two of Defendant's expert

witnesses be barred from testifying. In this Memorandum Opinion and Order, the Court only addresses the arguments relating to Dr. Alan Zelicoff.

## DISCUSSION

Under the well-established standard set forth in *Daubert*, qualified expert testimony: (1) must be based on sufficient facts or data; (2) must be the product of reliable principles and methods; and (3) the expert must have applied the principles and methods reliably to the facts of the case. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993); Fed. R. Evid. 702; *Hall v. Conoco Inc*., 886 F.3d 1308, 1311 (10th Cir. 2018). *Daubert* provides a "flexible" framework for courts to use in their roles as gatekeepers of expert testimony. *Hoffman v. Ford Motor Co.*, 493 F.App'x 962, 974 (10th Cir. 2012) (internal citation omitted). Depending on the nature of the issues presented and the expert's particular expertise, certain factors may or may not be pertinent to an evaluation of reliability, but the purpose of the *Daubert* inquiry is always "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 975 (citing *Dodge v. Cotter Corp*, 328 F.3d 1212, 1222–23 (10th Cir. 2003); quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

The Government challenges Dr. Zelicoff's testimony on the basis that he failed to produce an expert report, he is not qualified as an expert, and his testimony is irrelevant.

   a. <u>Failure to Produce a Report</u>

The Government first argues that the testimony of Dr. Alan Zelicoff should be barred for failure to produce an expert report. Under Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, if a defendant requests disclosure of certain evidence and the government complies, the defendant becomes obligated to make certain disclosures in return. It provides,

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if the defendant requests disclosure under subdivision (a)(1)(G) and the government complies.

The Rule does not require an expert report be written, but only requires a "written summary.[1]" *United States v. McCluskey,* 954 F. Supp. 2d 1224, 1231 (D.N.M 2013). The summary must describe the witness's opinions, bases and reasons for those opinions, and the witness's qualifications. Fed. R. Crim. Pro. 16(b)(1)(C). A notice is deficient when it provides only "a list of the general subject matters to be covered" and fails to "identify what opinion the expert would offer on those subjects." *United States v. Duvall*, 272 F.3d 825, 828-29 (7th Cir. 2001). Nevertheless, "detailed, extensive discussion is not required in the Rule 16 summary . . . the requirement setting forth 'the bases and reasons for the witnesses' opinions' does not track the methodological factors set forth by the Daubert Court." *McCluskey*, 954 F. Supp. 2d at 1231. Rule 16 disclosure is intended to give the opposing party notice, permitting preparation for cross-examination and presentation of opposing experts. *Id*.

In Defendant's notice of expert designation and Response to the Government's objection, Defendant proffered that Dr. Zelicoff is a medical doctor in internal medicine, epidemiology, and rheumatology and former professor of medicine with over 40 years of experience. His CV was attached to the notice. He has prescribed medications to thousands of patients, including the

---

[1] *United States v. Nacchio*, 555 F.3d 1234, 1260 (10th Cir. 2009) (McConnell, J. dissenting):
> [A] criminal defendant may call an expert witness to the stand without any advance disclosure whatsoever. There is no requirement of an expert report; there are no depositions of the expert; there are no motions for summary judgment to test whether there are triable issues regarding the witness's methodology. As in civil cases, the proponent of an expert in a criminal case has the burden of establishing that the witness's methodology is sound under the standards of Daubert and Kumho Tire. But absent any countervailing directive from the trial court, parties in criminal cases can, and typically do, meet this burden by eliciting foundational testimony from the witness on the stand, subject to cross-examination by the opposing party. A party in a criminal case does not have to make a motion to proceed in this fashion; it is the default procedure. As in civil cases, the questioning may be conducted in a separate hearing outside the presence of the jury, by motion of either party or of the court, or at the beginning of the witness's testimony.

medications which Defendant took in 2019. He will testify that certain medications taken by Defendant (namely paroxetine/Paxil, cyclobenzaprine/Flexeril, acyclovir, and diclofenac) have been shown by two recent epidemiologic medical studies to correlate to motor vehicle accidents resulting in traumatic injuries. Defendant received a copy of the studies.

At the hearing, Dr. Zelicoff expanded on his qualifications, noting that he specializes in epidemiology and public health. He practiced medicine and then began work at the Sandia National Laboratories in which he monitored the outbreak of unusual infectious diseases. In his career, he has published 30-40 publications relating to public health and statistics.

This explanation sufficiently provides Dr. Zelicoff's opinions, qualifications, and bases for the opinion. The notice and subsequent testimony provides enough for counsel "to frame a Daubert motion (or other motion in limine), to prepare for cross-examination, and to allow a possible counter-expert to meet the purpose of the case-in-chief testimony." *See United States v. Cerna*, 2010 U.S. Dist. LEXIS 62907 (N.D. Cali. June 8, 2010) (citing the Advisory Committee Note to the 1993 Amendment). Therefore, the testimony will not be excluded on the basis that the notice violated Rule 16.

    b. Qualifications

The Government next challenges Dr. Zelicoff's qualifications. It argues that as an expert in "internal medicine," he does not have the necessary experience in toxicology or pharmacology to testify about the effects of Defendant's prescribed drugs.

An expert is required to possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation." *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). Dr. Zelicoff is a physician who is required to keep abreast on medication studies and negative side effects. Even though he left the

practice of medicine, he testified that he has always continued his involvement in epidemiology and public health research. The studies he will testify about regard epidemiology and statistics—both fields with which he has ample experience. He has an extensive resume—he was a treating physician, professor of epidemiology, medical consultant, and author of epidemiological statistics. He graduated from Princeton, attended medical school at the University of Pittsburgh, completed an internal medicine residency and a rheumatology fellowship in New Mexico, went into private practice, and worked at the Sandia National Laboratories. He has published 30-40 articles, chapters, books, and manuscripts on public health issues, epidemiology, and medicine. He has testified before Congress 4 times. Stated simply, Dr. Zelicoff's credentials are most impressive and he is more than qualified to give expert opinion testimony in the areas of science and medicine in which he was tendered as an expert. Therefore, his qualifications are not an issue as far as the Court is concerned.

    c. <u>Relevancy</u>

The Government finally asserts that it is irrelevant to bring up Defendant's intoxication as the Government will not be attempting to prove recklessness by intoxication—its argument is that Defendant was reckless in using his phone while driving. It points out that voluntary intoxication is only a defense to specific intent crimes, and involuntary manslaughter is a general intent crime. *United States v. Smith*, 606 F.3d 1270, 1281 (10th Cir. 2010). However, involuntary intoxication resulting from the consumption of medically prescribed drugs is a defense to involuntary manslaughter. *United States v. Bindley*, 157 F.3d 1235, 1242 (10th Cir. 1998). Nevertheless, it does not appear that Defendant is pursuing an involuntary intoxication defense, as he has not provided notice to the government as required by Federal Rule of Criminal Procedure 12.2(b). *See* Fed. R. Crim. P. 12.2(b) (stating that a defendant must provide notice to the government of its intention to

introduce expert evidence relating to a mental condition bearing on the issue of guilt); *see also United States v. Katzin*, 707 Fed. Appx. 116 (3d Cir. 2017) (providing that intoxication qualifies as a "mental condition").

Moreover, the defense of involuntary intoxication requires proof that the defendant was so intoxicated that he was unable to distinguish between right and wrong, which is the same standard as applied in an insanity defense. *Sallahdin v. Gibson*, 275 F.3d 1211 (10th Cir. 2002). It appears to the Court that Defendant's expert would not testify that he was unable to distinguish between right and wrong, but rather that certain prescription drugs could have had an unexpected effect on Defendant not rising to the level of intoxication. Those facts would seemingly be relevant to countering the assertion that Defendant acted "without due caution." *See* 18 U.S.C. § 1112 (providing that one of the prongs of involuntary manslaughter requires proof that the defendant acted "without due caution and circumspection.").

The studies referenced by Dr. Zelicoff may be relevant to the Defendant's defense of how and why the crash occurred; however, the Court has a relevancy concern it wishes to raise with counsel. In addition to the question posed by the Court regarding whether Defendant intends to raise an involuntary intoxication defense, the Court has concerns over the relevance of Dr. Zelicoff's proposed expert testimony regarding the effect of certain medications on a driver or that a combination of certain drugs has a correlation to motor vehicle crashes. The Court recalls from the witness testimony at the suppression hearing that there was no evidence that the Defendant was under the influence of alcohol at the time of the crash. While there was evidence that a pill bottle with certain medications was in Defendant's travel bag, the Court has no recollection of any testimony that Defendant had consumed those medications at some relevant time before the crash. Absent some evidence that Defendant had consumed the medications at a relevant time prior to

the crash, the Court fails to see how Dr. Zelicoff's testimony would be relevant. Additionally, if there's no evidence that Defendant had consumed the medications in question, then the Government's concern about confusion or prejudice under Evidence Rule 403 may very well be meritorious.

Therefore, the Court orders supplemental briefing on whether or not Dr. Zelicoff's testimony is relevant. One or both of the parties shall order a transcript of Dr. Zelicoff's testimony from the May 24, 2022 hearing and then the parties shall submit their supplemental briefings no later than ten days from the completion of the transcript of Dr. Zelicoff's testimony. In addition, if Defendant does intend to use an involuntary intoxication defense, he shall notify the Court and Government of his intention, and stating any good cause for the delay in notification.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE