IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                                                                                  No. 1:21-cr-00596-WJ-1

ALEXIS RIEGO,

      Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART and DENYING IN PART DEFENDANT'S FOURTH MOTION IN LIMINE and DENYING DEFENDANT'S ELEVENTH MOTION IN LIMINE**

THIS MATTER is before the Court on Defendant's Fourth Motion in Limine to Exclude Audio Portion of Recordings by Police Officers (Doc. 109) ("Motion Four") and Defendant's Eleventh Motion in Limine to Exclude Graphic Video of Decedent's Injuries (Doc. 118) ("Motion Eleven"). The United States filed a response in opposition to both motions. (Doc. 145). The Court held a hearing on the motions on August 30, 2022. After reviewing the parties' briefing, arguments, and the applicable law, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Fourth Motion in Limine (Doc. 109) and DENIES Defendant's Eleventh Motion in Limine (Doc. 118).

## BACKGROUND

Defendant is charged with four counts of involuntary manslaughter and two counts of assault resulting in serious bodily injury stemming from a vehicle collision on September 7, 2019. Doc. 125. Defendant was driving a commercial tractor trailer on Interstate 40 through the Laguna Pueblo. The United States alleges that Defendant looked away from the road to answer a FaceTime call from his wife, failed to notice that traffic had stopped, and collided into a row of

vehicles without braking. It is further alleged that the impact killed four occupants in a Chevrolet Silverado and seriously injured two occupants in a Hummer H2. Defendant disputes the cause of the crash and maintains that his conduct does not satisfy the elements of the offenses charged.

Defendant filed thirteen motions in limine to exclude the introduction of various evidence against him at trial. The instant motions address the same piece of evidence: one twenty-six-minute lapel camera video recorded by first responder Laguna Police Officer Keith Riley at the scene of the crash.

## APPLICABLE LAW

Relevant evidence is that which tends to "make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2nd Cir. 1997). "[C]rime scene video gives the jury a walk through perspective of the crime scene." *Wilson v. Sirmons*, 536 F.3d 1064, 1116 (10th Cir. 2008) (quoting *Wilson v. State*, 983 P.2d 448, 468 (Okla. Crim. App. 1998). It may also be relevant to assist the jury in evaluating witness testimony. *Wilson*, 536 F.3d at 1117 (holding that crime scene video with accompanying sound was relevant in first-degree murder case to prove aggravating circumstances and illustrate witness testimony).

A district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *United States v. Martinez*, 938

F.2d 1078, 1082 (10th Cir. 1991). Rather, it is unfairly prejudicial if it "makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996) (quoting *United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir.1987)). "The trial court has broad discretion to determine whether or not prejudice inherent in otherwise relevant evidence outweighs its probative value." *United States v. Jefferson*, 925 F.2d 1242, 1258 (10th Cir.1991). The Tenth Circuit advises that "Rule 403 is an extraordinary remedy and should be used sparingly." *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1408 (10th Cir.1988).

Relevant evidence may also be excluded if it meets the definition of Hearsay and does not fall within an exception to the Rule Against Hearsay. *See* Fed. R. Evid. 802. Hearsay is defined as an out-of-court statement offered into evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. The statement may be an oral, written, or nonverbal conduct intended to be an assertion. *Id.* A hearsay statement may be admitted if it falls into an enumerated exception, such as: (1) a present sense impression describing or explaining an event or condition while or immediately after the declarant perceives it; (2) an excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement; and (3) a statement of the declarant's then-existing state of mind, or emotional, sensory, or physical condition. Fed. R. Evid. 803. "No authority creates a blanket requirement that a court must individually analyze each statement within a broader narrative under the present sense impression exception." *United States v. Lovato*, 950 F.3d 1337, 1342 (10th Cir. 2020) (citing *United States v. Allen*, 235 F.3d 482, 493 (10th Cir. 2000) (affirming that 911 call as a whole was admissible as a present sense impression)).

## DISCUSSION

**I.  Defendant's Motion to Exclude Audio Portion of Lapel Camera Video (Motion Four)**

In Motion Four, Defendant asks the Court to exclude the entire audio associated with the lapel camera video.[1] He maintains that much of the audio is irrelevant, contains improper hearsay statements, and is unfairly prejudicial to Defendant. Principally, Defendant is concerned with "hearsay statements by the officers surmising their opinions of the accident," and prejudicial "emotional cries and statements of family members of those involved in the collision." Doc. 109 at 4. If the Court admits the audio as a whole, Defendant raises further objections to several specific segments of audio.

The United States, on the other hand, contends that the entire twenty-six-minute audio is admissible. It states that the recording is relevant for several reasons: it orients the jury to the crash scene and the audio provides context for the video; it is probative of the elements of charged offenses such as death of the decedents and serious bodily injury of the surviving occupants; and it will assist the jury in evaluating the credibility of testifying witnesses. The United States further argues that the probative value of each statement is not outweighed by the risk of unfair prejudice because "[t]he audio is not any more emotionally charged than the facts of the case." Doc. 145 at 7. Lastly, the United States contends that none of the statements in the audio are hearsay—they either fall under an exception to the Rule Against Hearsay or do not meet the definition of hearsay in the first place.

**a.  Defendant's request to exclude the entire audio recording**

First, the Court finds that Officer Riley's lapel camera audio is relevant. Defendant is charged with multiple counts of involuntary manslaughter and assault resulting in serious bodily

---

[1] Defendant concedes that portions of the audio in which Defendant speaks are admissible as non-hearsay under Fed. R. Evid 801(d)(2) (opposing party's statement) that is relevant and not unfairly prejudicial.

injury. As such, the United States is required to prove "the death of the victim[s]" and serious injury to the surviving victims. Tenth Circuit Pattern Jury Instructions Criminal No. 2.54.1. The lack of sound coming from the crushed Chevrolet Silverado tends to prove that the decedent victims died. The sounds of the victims groaning and screaming is probative of severe injury to the surviving victims. Additionally, the video orients the jury to the crash scene and provides context for jurors to evaluate witness testimony. The audio component lends credibility to the video by suggesting that it was recorded in the immediate aftermath of the collision. It also aids the jury in evaluating the video's visual depictions. Accordingly, the Court finds that the audio portion of Officer Riley's lapel camera video is relevant under Fed. R. Evid 401.

      Second, the Court finds that the twenty-six-minute audio as a whole has significant probative value that is not substantially outweighed by the risk of unfair prejudice. It tends to prove required elements of the Defendant's charged offenses and provides context for the visual depiction of the crash scene to which many witnesses will testify. By contrast, Defendant alleges that only about two and a half minutes of the audio contains unfairly prejudicial material. The Court therefore declines to find that the probative value of the entire audio is "substantially outweighed" by the risk of unfair prejudice under Fed. R. Evid. 403. Instead, the Court will analyze Defendant's specific objections to the audio.

      Third, the Court will not exclude the entire audio pursuant to the Rule Against Hearsay. The audio consists of statements by Officer Riley, other first responders, crash victims, and Defendant himself. Defendant concedes that his statements are admissible as opposing party statements. *See* Fed R. Evid. 801(d)(2) (stating that statements made by the opposing party and offered against him are not hearsay). Nearly all of the statements made by Officer Riley and other first responders are admissible under the present sense impression exception (describing or

explaining the accident minutes after it occurred) or excited utterances exception (statements related to the startling crash, made under the stress it caused). Statements by the victims are excited utterances or then-existing emotional conditions—they relate to the crash and were made while the victims were subject to tremendous stress and emotional pain. The Court is not required to analyze each individual statement in concluding that the entire audio is admissible as an exception to the Rule Against Hearsay. *Lovato*, 950 F.3d at 1342. However, the Court will further consider Defendant's objections to specific hearsay statements.

Because the audio is relevant, more probative than prejudicial, and excepted from the Rule Against Hearsay, the Court will admit it into evidence. The Court next turns to Defendant's objections to specific portions of the audio.

### b. Defendant's specific objections to audio segments

Defendant objects to Officer Riley's radio call for backup between the 3:30 and 4:50 timestamps as unfairly prejudicial. Here, Officer Riley describes the scope of the crash and its precise location so that additional officers can respond to the scene. He states: "we got a five-car crash. Silverado that's crushed, four persons, they're all 10-7." Bates No. 1661 ("Lapel Camera Video"). Police code 10-7 is shorthand for "out of service." *See* Albuquerque Police Department Procedural Order § 2-10 (published June 15, 2021). Officer Riley is using the code to communicate that the occupants of the Silverado are deceased. Defendant contends that this is unfairly prejudicial. The Court disagrees. Officer Riley observed the heavily damaged Silverado, including the absence of movement or noise coming from the passenger compartment, and concluded that the occupants were deceased. Officer Riley speaks to the other officer in an emotionally detached, matter-of-fact manner with the purpose of coordinating law enforcement response. His conclusion tends to prove that the decedent victims died from the crash, which the

United States must prove to meet its burden. The Court finds that the audio between 3:30 and 4:50 has significant probative value and minimal risk of prejudice. It is therefore admissible under Fed. R. Evid. 403.

Defendant's next set of objections is to two segments of audio beginning at timestamps 5:35 and 11:43, in which he contends that Officer Riley has an unfairly prejudicial visceral reaction to the crushed Silverado. In the first segment, Officer Riley approaches the Silverado and can be heard audibly groaning for approximately one second before calling in additional backup. Similarly, in the second clip, he is heard breathing heavily in a distressed manner as he circles around the Silverado and looks inside. The Court is unconvinced that a brief groan or distressed breathing are likely to "affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence." *Roberts*, 88 F.3d at 880. Defendant is charged with causing the crash that killed of all four occupants of the Silverado. Just like his reading of the ten-codes, Officer Riley's reaction is probative of the element that the decedents died in the crash. His reaction is brief, restrained, and reasonable considering the facts of the case. Accordingly, the Court finds that the probative value of the statements is not substantially outweighed by the risk of unfair prejudice under Rule 403.

The Court next turns to Defendant's objection to the audio between timestamps 10:07 and 10:45, in which Mrs. Waquie has a visceral auditory reaction to the death of her children. In this segment, Mrs. Waquie is observed sitting on the ground crying. Her family helps her stand up. Overcome by trauma, she slumps over and screams "my babies." Bates. No. 1661. Her cries continue for fifteen to twenty seconds. Although the statement "my babies" suggests that Mrs. Waquie's children were in the Silverado, the United States has ample alternative evidence to establish the victims' identities. The audio would thus have only marginal probative value as

cumulative support for their identification. The value of the evidence is lessened because Defendant does not dispute the victims' identities. Moreover, the audio presents the precise risk that Rule 403 is designed to prevent—it is highly likely to provoke an emotional response in the jury that risks conviction apart from Defendant's guilt or innocence. *See Roberts*, 88 F.3d at 880. The risk of prejudice is magnified by the fact that the victims are a mother and her young children. *See United States v. Freeman*, 2021 WL 2222735, at *4 (N.D. Okla. June 2, 2021) ("Courts have held that crimes against children have the strong potential to interfere with the jurors' perception of the defendant in a manner that is unrelated to credibility"). The Court therefore finds that the risk of unfair prejudice substantially outweighs the minimal probative value of this portion of the audio and therefore excludes it in accordance with Fed. R. Evid. 403.

      Lastly, Defendant moves to exclude the audio from timestamp 21:30 to 22:30 wherein Officer Riley gives a summary of the crash to orient a New Mexico State Police Officer who had just arrived at the crash scene. Officer Riley, while pointing to different vehicles and portions of the interstate, narrates what he suspects happened during the crash: "The Hummer was in front. I guess traffic was backed up. These guys were in back [pointing to Silverado]. They stopped. [Defendant's Commercial Motor Vehicle] comes and rams everybody…crushing the Silverado…then everyone else follows after that." Bates No. 1661. Defendant argues that this is inadmissible hearsay. The Court agrees. Any juror who listens to this audio is likely to assume that the crash unfolded in the manner that Officer Riley describes. However, Officer Riley did not base his summary of the crash on personal observation. Instead, he pieced it together after the fact from evidence he observed and statements he obtained from eyewitnesses. The audio is therefore inadmissible hearsay—an out-of-court statement offered to prove the truth of the matter asserted—unless subject to an exception. *See* Fed. R. Evid 801.

The Court finds that the audio between timestamps 21:30 and 22:30 is inadmissible hearsay not within an exception. The United States raises two potential exceptions: present sense impression and excited utterance. The present sense impression exception does not apply because Officer Riley did not actually observe the crash. *See* Fed. R. Evid. 803(1) (present sense impression statements must be made "while or immediately after the declarant perceived" the event at issue). Nor are his statements excited utterances. There is a significant temporal separation between Officer Riley's arrival at the crash scene and the statements at issue. He had been at the crash scene for over twenty minutes and had already discussed the circumstances of the crash with several different officers. There is no indication that Officer Riley's "state of mind at the time that the statement was made…preclude[d] conscious reflection on the subject of the statement." *United States v. Alexander,* 331 F.3d at 116, 122 (D.C. Cir. 2003) (quoting *United States v. Joy,* 192 F.3d 761, 766 (7th Cir.1999)) (internal quotations and changes omitted). His ability to deliberately and calmly recount his version of the crash suggests that he was no longer under the stress of first witnessing the crash scene. The excited utterance exception therefore does not apply.

In conclusion, the Court rejects Defendant's argument that the entire audio portion of Officer Riley's lapel camera video must be excluded. However, the Court finds that two segments of audio are inadmissible: (1) the audio between timestamps 10:07 and 10:45 is unfairly prejudicial to Defendant pursuant to Fed. R. Evid. 403; and (2) the audio between timestamps 21:30 and 22:30 is inadmissible hearsay pursuant to Fed. R. Evid 802.

**II.   Defendant's Motion to Exclude Video Depicting Decedents (Motion Eleven)**

In Motion Eleven, Defendant asks the Court to exclude the video portions of the lapel camera footage that depict the decedents' bodies inside the Chevrolet Silverado on grounds that

they are irrelevant and unfairly prejudicial. Defendant does not dispute that the decedents died, so he argues that a post-crash video recording of their bodies is irrelevant and likely to evoke an emotional response from the jury that would be unfairly prejudicial. The United States responds that depictions of death are inherent in a manslaughter trial and any resulting prejudice to Defendant is not "unfair" under Fed. R. Evid. 403. Further, it argues that the video is "relatively mild compared to many homicide scenes" and the least gruesome evidence the United States has to depict the victims and their manner of death. Doc. 145 at 14.

Depictions of homicide victims "are relevant in showing the identity of the victim, the manner of death, the murder weapon, or any other element of the crime." *United States v. De Parias*, 805 F.2d 1447, 1453 (11th Cir. 1986) (holding that photographs of deceased victim were relevant to identification, means of death, and to corroborate testimony), overruled on other grounds by *United States v. Kaplan* 171 F.2d 1351 (11th Cir. 1999). Gruesomeness alone does not render such evidence inadmissible. *United States v. Naranjo*, 710 F.2d 1465, 1468 (10th Cir. 1983) (affirming admission of photographs depicting victim who was shot in the face over defendant's Rule 403 challenge). Courts have repeatedly affirmed the admission of graphic photographs of homicide victims over Rule 403 objections based upon their great probative value. *See De Parias*, 805 F.2d at 1453 (affirming admission of photographs of decomposed corpse); *see also United States v. Brown*, 441 F.3d 1330 (11th Cir. 2006) (affirming admission of "undoubtably relevant" photographs of stabbing victim despite blood on and around the body).

The Court declines to exclude the lapel camera video depicting decedent's bodies. The video is relevant to prove the victims' deaths and the manner of their deaths—that they died as a result of the crash. Moreover, the video is much less gruesome than photographs admitted over Rule 403 objections in other homicide trials. The Silverado's body panels and airbags entirely

conceal three out of four victims' bodies. Defendant's objection is thus only to showing the top of the fourth victim's head, her shoulder, and portions of both of her arms. Although the video does depict some blood staining on Defendant's white tee shirt and a deformity in her arm, it is much less likely to provoke an emotional response than the depiction of a stabbing victim or a "badly decomposed corpse." *See Brown*, 805 F.2d at 1362. The video depiction of the decedents is highly relevant to the elements of involuntary manslaughter. While there is some inherent risk of prejudice in depictions of death, Defendant is charged with the conduct that caused the victims' death. Accordingly, the Court finds that probative value of the lapel camera videos is not substantially outweighed by the risk of unfair prejudice under Rule 403.

## CONCLUSION

In sum, the Court finds that Officer Riley's lapel camera video depicting decedents is not unfairly prejudicial under Fed. R. Evid. 403. Defendant's Eleventh Motion in Limine (Doc. 118) is therefore DENIED.

The Court also finds that the audio portion of lapel camera video is admissible with two exceptions: (1) the audio between timestamps 10:07 and 10:45 is unfairly prejudicial to Defendant pursuant to Fed. R. Evid. 403; and (2) the audio between timestamps 21:30 and 22:30 is inadmissible hearsay pursuant to Fed. R. Evid. 802. Thus, Defendant's Fourth Motion in Limine (Doc. 109) is therefore GRANTED IN PART and DENIED IN PART.

The United States must redact the lapel camera audio from 10:07 to 10:45 and 21:30 to 22:30.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE